**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: ROYCE HOMES LP, | § | |
| | § | |
| Debtor. | § | |
| | § | |
| JOHN H. SPEER, | § | |
| | § | CIVIL ACTION NO. H-11-1069 |
| Appellant, | § | |
| | § | |
| v. | § | BANKRUPTCY NO. 09-32467 |
| | § | |
| CHAPTER 7 TRUSTEE | § | |
| RODNEY D. TOW, | § | |
| | § | |
| Trustee / Appellee. | § | |

**MEMORANDUM AND ORDER**

John Speer has appealed from the bankruptcy court's order compelling discovery conducted under Federal Rule of Bankruptcy 2004. Speer was sole owner of the Chapter 7 debtor, Royce Homes LP, and president and chief executive officer of Royce Homes's general partner, Hammersmith Group LLC. The appellee, Rodney Tow, serves as the trustee for Royce Homes's bankruptcy estate. In September 2010, the trustee issued a subpoena that sought "documents and communications pertaining to business transactions, financial matters, and litigation involving Speer and the Debtor." (Docket Entry No. 2, Ex. 16, ¶ 5). In response to the Rule 2004 subpoena, Speer produced a lengthy privilege log and a large number of documents, including emails. On the log, Speer marked many of the emails as covered by attorney-client privilege. At some point, the trustee learned that Speer's production included a number of these allegedly privileged emails. The trustee communicated this to Speer's attorneys. Through counsel, Speer responded that the inadvertent production had not waived the privilege, but he neither moved for protection nor demanded that the

documents be returned.

The trustee moved to compel the production of documents that Speer claimed as privileged. Speer responded to the motion, and the bankruptcy court held an evidentiary hearing. A number of issues affected the court's determination of the documents' discoverability, including whether Speer had a reasonable expectation of privacy as to the documents stored on Royce Homes's server; whether the joint-representation rules applied and, if so, how; whether the production had waived any privilege; and whether state or federal law applied to these issues. After the hearing, the bankruptcy court ruled that federal law applied to the discovery disputes; that Speer had not met his burden of demonstrating that attorney-client privilege applied; and that, to the extent the documents were privileged, it was waived. On March 11, 2011, the bankruptcy court entered an order granting the trustee's motion to compel, memorializing the previous oral ruling. (Docket Entry No. 2, Ex. 17). Speer filed a notice of appeal. (Docket Entry No. 1).

Although the parties have briefed the merits, (*see* Docket Entry Nos. 4, 6, 8), the trustee has moved to dismiss the appeal for lack of jurisdiction, (Docket Entry No. 5). Speer has responded, (Docket Entry No. 7); the trustee has replied, (Docket Entry No. 9); and Speer has surreplied, (Docket Entry No. 10). Based on the record, the briefs, and the applicable law, this court concludes that: (1) the challenged order is not a final order that Speer may appeal as of right under 28 U.S.C. § 158(a)(1); (2) the challenged order is not an appealable collateral order under *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541 (1949); and (3) there otherwise is no basis to grant leave to appeal, *see* 28 U.S.C. § 158(a)(3). The trustee's motion to dismiss the appeal, (Docket Entry No. 5), is granted; Speer's motion for leave to appeal, (Docket Entry No. 7, at 9), is denied; and the appeal is dismissed. The reasons for these rulings are explained below.

2

## I.    Background

On April 30, 2009, the bankruptcy court entered a Chapter 7 order for relief against Royce Homes.  The trustee for the bankruptcy estate, Rodney Tow, issued a subpoena to John Speer under Federal Rule of Bankruptcy Procedure 2004 on September 16, 2010.  (Docket Entry No. 2, Ex. 16, ¶¶ 2, 4).  "The subpoena duces tecum requested Speer to produce documents and communications pertaining to business transactions, financial matters, and litigation involving Speer and the Debtor." (*Id.*, ¶ 5).  This request sought email communications between Speer and his attorneys.  Some of the requested communications related to litigation in which the attorneys represented both Speer and Royce Homes (and related entities), while others related to litigation in which the attorneys represented only Speer.  Speer responded to the subpoena by both producing many documents and withholding many others on the basis of attorney-client privilege.  For the withheld documents, Speer provided a privilege log of about 1,000 entries.  (*Id.*, ¶¶ 6–7).  The trustee objected to this privilege log as inadequate.  Speer submitted an amended privilege log that was "almost identical to the original privilege log[.]"  (*Id.*, ¶ 10).  The trustee continued to object that the log was inadequate and that Speer could not validly assert the attorney-client privilege for many, if not most, of the documents.

Speer produced over 100,000 documents in response to the subpoena.  (Docket Entry No. 7, ¶ 4).  Part of the production was handled by his former Royce Homes executive assistant, Nancy Boothe.  She had access to Speer's "company-related e-mails and personal e-mails in connection with her job duties and responsibilities[.]"  (Docket Entry No. 2, Ex. 16, ¶ 19).  Boothe left Royce Homes in October 2008 to work as a legal secretary at a law firm.  Before she left, Speer instructed her to take her Royce Homes laptop with her.  "[H]er continued use of the computer was necessary

3

because she planned on remaining the Debtor's 'liaison' to attorneys who were working on litigation involving the Debtor." (*Id.*, ¶ 22).   In November 2008, Speer asked Boothe to print out and review emails he had sent from his Royce Homes email address, and sent through the Royce Homes server, and sort them into privileged and nonprivileged piles for discovery purposes in a lawsuit in which Speer and Royce Homes had been sued by a former employee.   Boothe's laptop did not contain Speer's emails.   Speer sent Ryan Gresham, a Royce Holmes IT employee,[1] to Boothe's home to upload his company emails onto the laptop.  (*Id.*, ¶¶ 24–26).  Boothe printed Speer's emails as instructed.  The case for which she did the work settled.  Speer told Boothe that the emails were no longer necessary and instructed her to discard the copies, but he did not instruct her to delete the emails from her laptop.  (*Id.*, ¶¶ 30–32).

The trustee requested access to Boothe's laptop as part of the Rule 2004 examination. Boothe informed Speer of this request, and he did not object.  Boothe told Speer that she intended to produce documents from the laptop to the trustee.  (*Id.*, ¶¶ 33–37).  "The Trustee took possession of the computer's contents, including Speer's e-mails."  (*Id.*, ¶ 38).

Sometime in December 2010, the trustee realized that the data taken from Boothe's laptop included emails that Speer had claimed as privileged on the amended privilege log.  The trustee shared this information with Speer's counsel.  (Docket Entry No. 4, at 12).  At first, "Speer's counsel did not demand that the Trustee refrain from reviewing these conversations."  (Docket Entry No. 2, Ex. 16, ¶ 42).  Speer's counsel thereafter "told the Trustee that Speer generally was not waiving any of the privileges."  (*Id.*)

Speer did not file a motion for protection or for return of the documents.  The trustee filed

---

[1]  (Docket Entry No. 4, at 12).

a motion to compel the production of documents listed on the amended privilege log, many of which were already in his possession.  To decide this motion, the bankruptcy court had to determine whether state or federal law applied; whether the trustee had "deliberately invaded" Speer's attorney-client privilege in the subpoena by the scope of the discovery requests; whether the documents were privileged; whether Speer had a reasonable expectation of privacy in the documents stored on the Royce Homes server; and whether Speer had waived any privilege as to the documents stored on the server and on Boothe's laptop because of the circumstances of their production.

The bankruptcy court held an evidentiary hearing in January 2011.  Boothe and the trustee testified.  Speer did not appear.  Instead, his counsel sought to introduce an affidavit from Speer. The trustee objected.  The bankruptcy court sustained the objection on the grounds that the affidavit contained inadmissible hearsay and that Speer—who lives and works in the bankruptcy court's district and division—had chosen not to appear and testify.  At the hearing's conclusion, the bankruptcy judge issued preliminary rulings from the bench, finding that Speer had no valid attorney-client privilege in the documents and that if the documents were subject to the privilege, it was waived.  The court memorialized its rulings in a memorandum opinion and separate order granting the motion to compel, both entered in March 2011.  (Docket Entry No. 2, Exs. 16, 17).  As Speer points out, as of the date of that order, the trustee had not initiated an adversary proceeding against him.  (Docket Entry No. 7, ¶ 2).  The trustee did so in April 2011.  (*Tow v. Amegy Bank N.A.*, No. 4:11-cv-3700, Docket Entry No. 1, ¶ 2).[2]

Speer filed his notice of appeal from the order granting the trustee's motion to compel on

---

[2]  A district court may take judicial notice of filings in related litigation.  *See, e.g.*, *Int'l Strategies Grp., Ltd. v. Ness*, 645 F.3d 178, 180 (2d Cir. 2011); *Chun v. Korean Airlines Co. (In re Korean Air Lines Co. Antitrust Litig.)*, 642 F.3d 685, 689 n.1 (9th Cir. 2011) (citing *United States v. Wilson*, 631 F.2d 118, 119 (9th Cir. 1980)).

March 16, 2011.  (Docket Entry No. 1, Ex. 2).

## II.      Analysis

Federal Rule of Bankruptcy Procedure 2004 is a prelitigation discovery mechanism unique

to the bankruptcy context.  In relevant part, the rule provides:

>    (a) Examination on Motion
>         On a motion of any party in interest, the court may order the
>         examination of any entity.
>
>    (b) Scope of Examination
>         The examination of any entity under this rule or of the debtor under
>         § 343 of the Code may relate only to the acts, conduct, or property or
>         to the liabilities and financial condition of the debtor, or to any matter
>         which may affect the administration of the debtor's estate, or to the
>         debtor's right to a discharge.  In . . . an individual's debt adjustment
>         case under chapter 13, . . . the examination may also relate to the
>         operation of any business and the desirability of its continuance, the
>         source of any money or property acquired or to be acquired by the
>         debtor for purposes of consummating a plan and the consideration
>         given or offered therefor, and any other matter relevant to the case or
>         to the formulation of a plan.
>
>    (c) Compelling attendance and production of documents
>         The attendance of an entity for examination and for the production of
>         documents, whether the examination is to be conducted within or
>         without the district in which the case is pending, may be compelled
>         as provided in Rule 9016 for the attendance of a witness at a hearing
>         or trial.  As an officer of the court, an attorney may issue and sign a
>         subpoena on behalf of the court for the district in which the
>         examination is to be held if the attorney is admitted to practice in that
>         court or in the court in which the case is pending.

FED. R. BANKR. P. 2004.  Speer appeals from the Rule 2004 order compelling the production of

documents that he claims are privileged.  The questions are whether he may appeal this order as of

right under 28 U.S.C. § 158(a)(1); if not, whether he may appeal under the collateral-order doctrine;

or, if not, whether he should be granted leave to appeal under 28 U.S.C. § 158(a)(3).  Each question

is analyzed below.

A.        **Appeal as of Right**

A federal district court has jurisdiction to hear appeals—and an aggrieved litigant may appeal as of right— from the "final judgments, orders, and decrees" of a bankruptcy court.  28 U.S.C. § 158(a)(1).  In the Fifth Circuit, as in others, "finality" is interpreted more pragmatically and less technically in the bankruptcy context than in the ordinary § 1291 civil context.  *See, e.g.*, *ASARCO, Inc. v. Elliott Mgmt. (In re ASARCO, L.L.C.)*, 650 F.3d 593, 599–600 (5th Cir. 2011); *accord, e.g.*, *McDow v. Dudley*, 662 F.3d 284, 287 (4th Cir. 2011).[3]  "Concepts of finality . . . are less concrete in the bankruptcy context and, thus, principles disfavoring appeal of orders that do not dispose of an entire case are often less rigorously adhered to in bankruptcy cases." *Tex. Comptroller of Pub. Accounts v. Transtexas Gas Corp. (In re Transtexas Gas Corp.)*, 303 F.3d 571, 580 (5th Cir. 2002).  Such a pragmatic approach to finality is necessary "because '[b]ankruptcy cases frequently involve protracted proceedings with many parties participating . . . . [Therefore] courts have permitted appellate review of orders that in other contexts might be considered interlocutory.'" *In re Gray*, 447 B.R. 524, 528 (E.D. Mich. 2011) (quoting *Lindsey v. O'Brien, Tanski, Tanzer & Young Health Care Providers of Conn. (In re Dow Corning Corp.)*, 86 F.3d 482, 488 (6th Cir. 1996)) (alterations in original).

In the Fifth Circuit, "an appealed bankruptcy order will be considered final if it constitutes either a final determination of the rights of the parties to secure the relief they seek, or a final disposition of a discrete dispute within the larger bankruptcy case." *In re ASARCO*, 650 F.3d at 600

---

[3] *But cf. Official Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.)*, 3 F.3d 49, 53 (2d Cir. 1993) (holding that courts, in determining what constitutes "finality" in the bankruptcy context, are to "apply the same standards of finality that we apply to an appeal under 28 U.S.C. § 1291" (internal quotation marks and emphasis omitted)).

(internal alteration and quotation marks omitted).  "The conclusion of a discrete judicial unit in the larger case, rather than the conclusion of the entire litigation, results in a final appealable order." *Tax Ease Funding, L.P. v. Thompson (In re Kizzee-Jordan)*, 626 F.3d 239, 242 (5th Cir. 2010) (internal quotation marks omitted).  "In the bankruptcy context, however, the relevant 'judicial unit' for application of the finality rule is not the overall bankruptcy case, but rather the particular adversary proceeding or discrete controversy pursued within the broader framework cast by the petition." *Strong v. W. United Life Assurance Co. (In re Tri-Valley Distrib., Inc.)*, 533 F.3d 1209, 1213–14 (10th Cir. 2008) (per curiam) (internal quotation marks omitted); *see also Stansbury v. Holloway (In re Holloway)*, 370 F. App'x 490, 492 (5th Cir. 2010) (per curiam) ("Finality in bankruptcy cases is contingent upon the conclusion of an adversarial proceeding within the bankruptcy case, rather than the conclusion of the entire litigation." (quoting *England v. FDIC (In re England)*, 975 F.2d 1168, 1172 (5th Cir. 1992))).  Applying these principles, another court in this district has given examples of "final" orders in the Fifth Circuit:

> Examples of "final," appealable orders of a bankruptcy court include turnover orders or orders recognizing the security interest of a creditor.  *See In re Greene County Hosp.*, 835 F.2d [589, 595 (5th Cir. 1988)].  In contrast, bankruptcy court orders "that constitute only a preliminary step in some phase of the bankruptcy proceeding and that do not directly affect the disposition of the estate's assets [are] interlocutory and not appealable."  *Id.* (citing *In re Delta Servs. Indus.*, 782 F.2d 1267, 1270–71 (5th Cir. 1986)).  An example of such an order would be an order appointing an interim trustee.

*Smith v. AET Inc.*, Civ. A. Nos. C-07-123, C-07-124, C-07-126, 2007 WL 1644060, at *3 (S.D. Tex. June 4, 2007).

The Seventh Circuit's approach to finality in this context is both helpful and consistent with Fifth Circuit case law.  Analyzing 28 U.S.C. § 158(d)'s similar language conferring bankruptcy

jurisdiction on the circuit courts, the Seventh Circuit drew a distinction between "discrete disputes" and "discrete issues."  Orders disposing of discrete disputes are "final"; orders disposing of discrete issues are not.  *See In re McKinney*, 610 F.3d 399, 404 (7th Cir. 2010) ("When we talk about finality in bankruptcy we talk about proceedings resolving disputes, not issues."); *In re Comdisco, Inc.*, 538 F.3d 647, 652 (7th Cir. 2008) (Wood, J.) ("[T]here is a difference between a discrete issue and a discrete dispute, and the ruling here fails to qualify as a separable dispute.").  Drawing from a First Circuit opinion authored by then-Judge Breyer,[4] the Seventh Circuit explained that a discrete dispute is one in which the claim's resolution "would be final as a stand-alone suit outside of bankruptcy[.]" *In re Comdisco*, 538 F.3d at 651.  "Generally, the easiest way to tell whether an order is sufficiently final in the bankruptcy context is whether it resolves a proceeding within the bankruptcy that would be a freestanding lawsuit if there were no bankruptcy action."  *In re McKinney*, 610 F.3d at 402. On the other hand, "a decision or order that resolves only an issue that arises during the administration of a bankruptcy estate is too small a litigation unit to justify treatment as a final judgment."  *In re Comdisco*, 538 F.3d at 651.  Such a discrete issue does not qualify as a "final" appealable order.

Although the Fifth Circuit does not use the terms "discrete dispute" and "discrete issue," its approach is consistent.  The Fifth Circuit treats as discrete disputes those orders that "[are] considered by all parties to be final on the claim at issue and le[ave] nothing more for the court to do."  *In re Kizzee-Jordan*, 626 F.3d at 242; *see also Greyhound Lines, Inc. v. Rogers (In re Eagle Bus Mfg., Inc)*, 62 F.3d 730, 734 (5th Cir. 1995) (holding an order granting motions to file untimely proofs of claim as final because "the bankruptcy court was left with no dispute or issue to resolve

---

[4] *In re Saco Local Dev. Corp.*, 711 F.2d 441, 444–46 (1st Cir. 1983).

after entering the order").  By contrast, "bankruptcy court orders that constitute only a preliminary step in some phase of the bankruptcy proceeding and that do not directly affect the disposition of the estate's assets [are] interlocutory and not appealable."  *Oxley v. Watson (In re Watson)*, 884 F.2d 879, 880 (quoting *Foster Secs., Inc. v. Sandoz (In re Delta Servs. Indus., Etc.)*, 782 F.2d 1267, 1270–71 (5th Cir. 1986)); *accord, e.g.*, *Pickle v. Greenstein (In re Pickle)*, 149 F.3d 1174 (table), 1998 WL 413023, at *2 (5th Cir. 1998).  The "preliminary step" is a "discrete issue": the order resolves no claims, and the bankruptcy court is left with more work to do between the parties.[5]

The order granting the trustee's motion to compel production of documents over privilege assertions at most resolves a discrete issue, not a discrete dispute.  Speer says as much in his surreply.  (*See* Docket Entry No. 10, ¶ 4 ("The Turnover Order resolved the narrow and discrete issue of John Speer's attorney-client privilege rights in the Documents.")).  This discovery motion would not qualify as a freestanding lawsuit; *see In re McKinney*, 610 F.3d at 402; it is "too small a litigation unit to justify treatment as a final judgment[,]" *In re Comdisco*, 538 F.3d at 651.  Instead, the motion and order constitute "a preliminary step in some phase of the bankruptcy proceeding and . . . do not directly affect the disposition of the estate's assets."  *In re Watson*, 884 F.2d at 880.

The extensive case law holding bankruptcy discovery orders to be interlocutory confirms this result.  It is well-established that a discovery ruling in civil cases outside the bankruptcy context is "a clearly interlocutory decision[.]"  *FirsTier Mortg. Co. v. Invs. Mortg. Ins. Co.*, 498 U.S. 269, 276 (1991).  A court order to produce documents claimed to be covered by the attorney-client privilege

---

[5]   *ASARCO* is not to the contrary.  The Fifth Circuit held that an order under § 363(b) of the Bankruptcy Code, authorizing the debtor to reimburse potential bidders for conducting due diligence on a court judgment in the debtor's favor—an extremely substantial asset—was final for the purpose of an appeal as of right.  650 F.3d at 600.  On the one hand, this order likely could have issued in a freestanding lawsuit, *see In re McKinney*, 610 F.3d at 402; the debtor could have sued for a declaratory judgment that its reimbursement was permissible under § 363(b).  And the reimbursement would "directly affect the disposition of the estate's assets" because it would decrease the debtor's assets available to be distributed among the creditors.  *In re Watson*, 884 F.2d at 880.

10

is not appealable as of right under § 1291. *See generally Mohawk Indus., Inc. v. Carpenter*, 130 S. Ct. 599 (2009) (implying the interlocutory nature of such an order by deciding whether it would qualify for immediate appeal under the collateral-order exception). In the bankruptcy context, discovery orders also are generally considered interlocutory and not immediately appealable. *See, e.g.*, *Vance v. Lester (In re Vance)*, 165 F.3d 34 (table), 1998 WL 783728, at *1 (7th Cir. 1998); *In re Jeanette Corp.*, 832 F.2d 43, 46 (3d Cir. 1987); *Int'l Horizons, Inc. v. Comm. of Unsecured Creditors (In re Int'l Horizons, Inc.)*, 689 F.2d 996, 1000–01 (11th Cir. 1982); *Citron & Deutsch v. Ya Hsin Indus. Co. (In re Protron Digital Corp.)*, No. EDCV 10-00941-CJC, 2011 WL 1585564, at *3 (C.D. Cal. Apr. 27, 2011); *In re Gray*, 447 B.R. at 531–32; *In re Dental Profile, Inc.*, No. 09 C 6160, 2010 WL 431590, at *2–3 (N.D. Ill. Feb. 1, 2010); *Kaiser Grp. Int'l, Inc. v. Mittal Steel Ostrava, a.s. (In re Kaiser Grp. Int'l, Inc.)*, 400 B.R. 140, 144 (D. Del. 2009); *Countrywide Home Loans, Inc. v. Office of the U.S. Trustee (In re Countrywide Home Loans, Inc.)*, Civ. A. No. 08-317, 2008 WL 2388285, at *3–4 (W.D. Pa. June 11, 2008); *Hoffenberg v. Cohen (In re Towers Fin. Corp.)*, 164 B.R. 719, 720 (S.D.N.Y. 1994). A party challenging a discovery order has two alternatives to interlocutory appeal: complying with the order and challenging it at the conclusion of the discrete dispute, the more common approach; or refusing to comply and contesting the order's validity when held in contempt for the refusal. *See, e.g.*, *In re Int'l Horizons*, 689 F.2d at 1001; *In re Protron Digital*, 2011 WL 1585564, at *3 (citing *Mohawk*, 130 S. Ct. at 608; *United States v. Krane*, 625 F.3d 568, 572 (9th Cir. 2010)); *In re Gray*, 447 B.R. at 531; *In re Countrywide Home Loans*, 2008 WL 2388285, at *3; *Aetna Cas. & Surety Co. v. Glinka*, 154 B.R. 862, 867 (D. Vt. 1993); *cf. Mohawk*, 130 S. Ct. at 608 (in the nonbankruptcy civil context, "[a]nother long-recognized option is for a party to defy a disclosure order and incur court-imposed sanctions"); *Gustafson v. Seaver (In re Hecker)*, Civ. File No. 10-1904 (MJD), 2010 WL 1875553, at *5 (D. Minn. May 10,

11

2010) (denying leave to appeal an adverse bankruptcy discovery order because of "the possibility of ongoing proceedings, such as contempt proceedings, which could resolve or narrow the issues raised on appeal").

Against this case law, Speer argues that the challenged order in this case is final, relying on *Intercontinental Enterprises, Inc. v. Keller (In re Blinder, Robinson and Co.)*, 127 B.R. 267 (D. Colo. 1991). *Blinder* involved the appeal of two bankruptcy-court orders. The second order granted the trustee's motion for a closed Rule 2004 examination.[6] The responding party appealed the denial of the motion to reconsider. *See id.* at 270–71. The trustee moved to dismiss the appeal for lack of jurisdiction. *Id.* at 276. The district court held that the order was final and denied the motion to dismiss. The court began its analysis by surveying the existing case law and finding "little direct authority on whether an order authorizing or limiting a Rule 2004 examination is a final, appealable order." *Id.* at 271.[7] The court stated that "this appeal involves the discrete issue of the Trustee's entitlement to closed Rule 2004 examinations, and the bankruptcy court's order appears to have fully resolved the parties' dispute." *Id.* at 277. And because "there is no underlying litigation to which the Rule 2004" order attaches, the aggrieved party would be unable to appeal that order until the conclusion of the entire case. *Id.* The *Blinder* court concluded that the discovery order was "final" and immediately appealable.

As an initial matter, *Blinder* does not necessarily support Speer's position. *Blinder* has been

---

[6] The first order granted the trustee's motion to conduct certain Rule 2004 examinations. The district court held this order to be interlocutory because, since the order's issuance, the bankruptcy court had continued to revisit the issue in subsequent proceedings. *See In re Blinder, Robinson*, 127 B.R. at 272–73. The district court dismissed the appeal of the order for lack of jurisdiction.

[7] Although this quotation appears in the *Blinder* court's discussion of the first order, the court refers to its survey of the caselaw in discussing the second order. *See id.* at 277 ("For this reason, as I have outlined in connection with No. 90-K-1863, a number of courts have permitted a direct appeal from a Rule 2004 order.").

12

cited for the proposition that "[a] majority of courts that have considered the issue have held that orders granting or denying Rule 2004 examinations are, like discovery orders, interlocutory." *In re Vance*, 1998 WL 783728, at *1. And *Blinder* recognizes that each court must engage in a case-by-case analysis to determine the "finality" of a discovery order. *See* 127 B.R. at 272–73. Speer's larger problem in relying on *Blinder*, however, is its scant support in subsequent cases. At least three district courts have refused to follow its holding or to apply it to reach the same result. *See In re Gray*, 447 B.R. at 530–32; *In re Midwest Video Games, Inc.*, No. 98 C 3836, 1998 WL 395152, at *1–2 (N.D. Ill. July 9, 1998); *In re Towers Fin.*, 164 B.R. at 720–21; *cf. Glinka*, 154 B.R. at 868 (holding that although *Blinder*'s case-by-case analysis may fit "*in some limited circumstances*, the facts surrounding the subpoena and motions in the case at bar do not merit by-passing the requirement of a contempt adjudication before permitting an appeal" (emphasis added)). When the *Blinder* court wrote, it had  little guidance on whether an order authorizing or limiting a Rule 2004 examination is a final, appealable order. 127 B.R. at 271. Since then, the cases have consistently held that Rule 2004 orders are interlocutory and not immediately appealable. Speer's reliance on *Blinder* is unavailing.

Speer attempts to distinguish his case—which involves the rejection of a privilege claim—from those cases granting or denying Rule 2004 examinations.[8]  (Docket Entry No. 7, ¶ 17). Here again, Speer faces case law consistently holding that discovery orders rejecting claims of attorney-client privilege are interlocutory. *See In re Protron Digital*, 2011 WL 1585564, at *3; *BAC Home Loans Servicing, L.P. v. McDermott (In re Santiago)*, No. 1:11-Cv-561, 2011 WL 1257209, at *1–2 (N.D. Ohio Mar. 31, 2011); *In re Hecker*, 2010 WL 1875553, at *3–4; *Glinka*, 154 B.R. at

---

[8]   Given Speer's reliance on *Blinder*—a case involving the limitations placed on a Rule 2004 examination, albeit to protect attorney-client privilege—this new position seems suspect.

866–68. *Glinka* is particularly instructive.  In that case, the bankruptcy court entered a Rule 2004 order allowing the trustee to conduct an examination of the debtor and authorizing the trustee to order certain parties to produce documents.   One of the parties, Aetna Casualty and Surety Company, moved to protect those documents that it claimed were protected by attorney-client privilege and   attorney work-product protection.   The bankruptcy court denied the motion for protection and ordered the documents produced.  Aetna appealed to the district court, and the trustee moved to dismiss the appeal for lack of jurisdiction.  *Id.* at 864–66.  At the motion hearing, the district court held that the challenged order "was a final order since it resolved all of the issues pertaining to a discrete dispute in the bankruptcy case, the discovery dispute."  *Id.* at 867.  On reconsideration, the court reversed itself and held that the order was interlocutory.  The court noted *Blinder*'s holding and rationale that, "[s]ince Rule 2004 examinations do not occur in the context of an underlying litigation, traditional rules of finality would allow appeal of a Rule 2004 order upon the closing of the bankruptcy case."  *Id.* at 868.  The *Glinka* court remained unpersuaded, however, that the discovery order was a final order.  The parties had returned to the bankruptcy court to clarify the scope of the subpoena, demonstrating the order's lack of finality.  The district court "ha[d] no way of conclusively determining whether Aetna . . . will refuse to comply with the subpoenas" and, if it so refused, whether the bankruptcy court would enter a contempt order.  *Id.*  "The virtue of a contempt adjudication before allowing an appeal," the *Glinka* court concluded, "is that it affords the parties a 'second look' before determining whether to pursue or resist the discovery."  *Id.* (quoting *Mount Sinai Sch. of Med. v. Am. Tobacco Co. (In re Application of Am. Tobacco Co.)*, 866 F.2d 552, 554 (2d Cir. 1989)).

This case is squarely within the holdings of *Glinka* and other courts that, in the bankruptcy context, a discovery order—including one rejecting a claim of attorney-client privilege—is

14

interlocutory and not immediately appealable.  On the present record, as in *Glinka,* this court cannot determine whether Speer will fully comply with the discovery order or whether the parties will take further action.  *See, e.g.*, 154 B.R. at 868.  The order compelling Speer to produce documents claimed as privileged is not "final" within the meaning of 28 U.S.C. § 158(a)(1).  Speer may not appeal as of right.

### B.     The Collateral-Order Doctrine

Speer argues that even if the order compelling production is not "final" under § 158(a)(1), it is immediately appealable under the collateral-order doctrine.  "'The collateral order doctrine is best understood not as an exception to the "final decision" rule laid down by Congress in § 1291, but as a "practical construction" of it.'"  *Martin v. Halliburton*, 618 F.3d 476, 482 (5th Cir. 2010) (quoting *Digital Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 867 (1994)).  The doctrine encompasses "a small class of collateral rulings that, although they do not end the litigation, are appropriately deemed final."  *Mohawk*, 130 S. Ct. at 605 (internal quotation marks omitted).  "The claims are too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated."  *Martin*, 618 F.3d at 482 (quoting *Will v. Hallock*, 546 U.S. 345, 349 (2006)) (internal quotation marks omitted).  As the Supreme Court recently reaffirmed, "th[is] class of collaterally appealable orders must remain narrow and selective in its membership."  *Mohawk*, 130 S. Ct. at 609 (internal quotation marks omitted).

The Supreme Court has established three requirements for immediate appealability under the collateral-order doctrine: the order must "[1] conclusively determine the disputed question, [2] resolve an important issue completely separate from the merits of the action, and [3] be effectively unreviewable on appeal from a final judgment."  *Will*, 546 U.S. at 349 (internal quotation marks

omitted); *accord, e.g.*, *Mohawk*, 130 S. Ct. at 605.  The class of claims to which the challenged order belongs, rather than the individual claim and its particular circumstances, must satisfy these three requirements.  Courts are not to "engage in an individualized jurisdictional inquiry."  *Mohawk*, 130 S. Ct. at 605 (internal quotation marks omitted); *see also Martin*, 618 F.3d at 483 ("we proceed on a categorical basis, looking only at whether 'the class of claims, taken as a whole, can be vindicated by other means' than immediate appeal" (quoting *Mohawk*, 130 S. Ct. at 605)).  Of these three requirements, the *Mohawk* Court emphasized the third:

> More significantly, "the third *Cohen* question, whether a right is 'adequately vindicable' or 'effectively reviewable,' simply cannot be answered without a judgment about the value of the interests that would be lost through rigorous application of a final judgment requirement." *Digital Equipment*, 511 U.S., at 878–89.  That a ruling "may burden litigants in ways that are only imperfectly reparable by appellate reversal of a final district court judgment . . . has never sufficed." *Id.*, at 872.  Instead, the decisive consideration is whether delaying review until the entry of final judgment "would imperil a substantial public interest" or "some particular value of a high order." *Will*, 546 U.S., at 352–53.

130 S. Ct. at 605.

*Mohawk* arose outside the bankruptcy context, in a wrongful-termination suit by an individual against his former employer.  The individual moved to compel the production of certain documents from the employer.  The employer claimed that these documents were protected by the attorney-client privilege.  The district court agreed but found a waiver and granted the motion to compel.  The employer appealed to the Eleventh Circuit, which dismissed for lack of jurisdiction under 28 U.S.C. § 1291.  The Eleventh Circuit rejected the employer's claim that the discovery order qualified under the collateral-order doctrine.  The Supreme Court granted *certiorari* "to resolve a conflict among the Circuits concerning the availability of collateral appeals in the attorney-client privilege context."  130 S. Ct. at 604.

16

The *Mohawk* Court held that "the collateral order doctrine does not extend to disclosure orders adverse to the attorney-client privilege." *Id.* at 609. The employer had argued "that rulings implicating the attorney-client privilege differ in kind from run-of-the-mill discovery orders because of the important institutional interests at stake"—that is, the great importance of the attorney-client relationship. *Id.* at 606. The Court responded that the employer had framed the question incorrectly:

> The crucial question, however, is not whether an interest is important in the abstract; it is whether deferring review until final judgment so imperils the interest as to justify the cost of allowing immediate appeal *of the entire class of relevant orders*. We routinely require litigants to wait until after final judgment to vindicate valuable rights, including rights central to our adversarial system.

*Id.* (emphasis added). "That a fraction of orders adverse to the attorney-client privilege may nevertheless harm individual litigants in ways that are only imperfectly reparable," the Court explained, "does not justify making all such orders immediately appealable as of right under § 1291." *Id.* at 608 (internal quotation marks omitted). Instead, "postjudgment appeals generally suffice to protect the rights of litigants and assure the vitality of the attorney-client privilege." *Id.* at 606. The Court listed the alternatives to the employer available besides immediate appeal: requesting leave to file an interlocutory appeal under 28 U.S.C. § 1292(b); seeking mandamus; or refusing to comply with the order, incurring sanctions, and appealing that sanctions order immediately. *Id.* at 607–08.

Many courts have declined to apply the collateral-order doctrine to allow immediate review of discovery orders issued by bankruptcy courts. *See, e.g.*, *In re Tullius*, No. EP-11-mc-365-KC, 2011 WL 5006673, at *3–4 (W.D. Tex. Oct. 20, 2011); *CitiMortgage, Inc. v. Gargula (In re Handloser)*, No. 4:11MC00015, 2011 WL 6934379, at *2 (E.D. Ark. Aug. 5, 2011); *In re Gray*, 447 B.R. at 533; *In re Dental Profile, Inc.*, 2010 WL 431590, at *3; *Kennedy & Assocs., Inc. v.*

17

*Worldcom, Inc. (In re Worldcom, Inc.)*, No. 1:08-cv-10354-RJH, 2009 WL 2215296, at *3 (S.D.N.Y. July 23, 2009); *In re Kaiser Grp. Int'l*, 400 B.R. at 144.   One district court, citing *Mohawk*, held that the collateral-order doctrine did not allow interlocutory appeal of a discovery order compelling production of documents claimed to be covered by attorney-client privilege.   *In re Protron Digital*, 2011 WL 1585564, at *3.   As *Mohawk* makes clear, Speer must show that bankruptcy discovery orders compelling production of allegedly privileged documents, as a categorical group, are entitled to membership in the "narrow and selective" class of collaterally appealable orders.   130 S. Ct. at 609 (internal quotation marks omitted).   As in *Mohawk*, alternative avenues of relief are available to Speer, including seeking leave to appeal under 28 U.S.C. § 158(a)(3)—which he has done—or refusing to comply with the discovery order and, if sanctioned, appealing that sanctions order.   The order is not "effectively unreviewable."   *See In re Gray*, 447 B.R. at 533.   Speer may not immediately appeal the order under the collateral-order doctrine.

## C.  Leave to Appeal

Finally, Speer asks that his improper notice of appeal be treated as a motion for leave to appeal an interlocutory order under 28 U.S.C. § 158(a)(3).   *See* FED. R. BANKR. P. 8003(c). "Section 158 does not establish any standards to guide the district courts' discretion" whether to grant leave to appeal an interlocutory order.   *In re Gray*, 444 B.R. at 533.   Although the Fifth Circuit has expressly reserved the question, *see Ichinose v. Homer Nat'l Bank (In re Ichinose)*, 946 F.2d 1169, 1177 (5th Cir. 1991), district courts within the Fifth Circuit have looked to the factors listed under 28 U.S.C. § 1292(b) in determining whether to grant such a motion, *e.g.*, *Chartis Specialty Ins. Co. v. Askanase (In re CES Envtl. Servs.)*, Civ. A. No. H-11-560, 2011 WL 1237939, at *2 (S.D. Tex. Mar. 31, 2011); *Panda Energy Int'l, Inc. v. Factory Mut. Ins.*, Civ. A. Nos. 3:11-CV-003-K, 3:10-CV-2541-K, 2011 WL 610016, at *3 (N.D. Tex. Feb. 14, 2011); *Sims v. Sunnyside Land, LLC*,

18

425 B.R. 284, 289–90 (W.D. La. 2010); *Chambers v. First United Bank & Trust Co.*, No. 4:08-mc-007, 2008 WL 5141264, at *1 (E.D. Tex. Dec. 5, 2008).   District courts follow the same general approach.   *See, e.g.*, *In re Fairfield Sentry Ltd. Litig.*, 458 B.R. 665, 672–73 (S.D.N.Y. 2011); *Mata v. Eclipse Aerospace, Inc. (In re AE Liquidation, Inc.)*, 451 B.R. 343, 346 (D. Del. 2011); *In re Gray*, 447 B.R. at 533; *Musselman v. Stanonik (In re Seminole Walls & Ceilings Corp.)*, 388 B.R. 386, 390–91 (M.D. Fla. 2008).   That approach is as follows:

> Under § 1292(b), an appellant seeking review of an interlocutory order must show: (1) the question involved is one of law; (2) the question is controlling; (3) there is substantial ground for difference of opinion respecting the correctness of the [bankruptcy] court's decision; and (4) an immediate appeal would materially advance the ultimate termination of the litigation.

*In re Gray*, 447 B.R. at 533 (quoting *Wicheff v. Baumgart (In re Wicheff)*, 215 B.R. 839, 844 (6th Cir. BAP 1998)); *see also* 28 U.S.C. § 1292(b) (a district court may certify an interlocutory order to the circuit court where "such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation").   Interlocutory bankruptcy appeals should be limited to cases presenting exceptional circumstances.   *E.g.*, *In re Fairfield Sentry*, 458 B.R. at 673; *In re AE Liquidation*, 451 B.R. at 346; *In re Gray*, 447 B.R. at 533–34; *Kore Holdings, Inc. v. Rosen (In re Rood)*, 426 B.R. 538, 548 (D. Md. 2010).   Speer, as the movant, bears the burden of establishing such exceptional circumstances.   *E.g.*, *In re AE Liquidation*, 451 B.R. at 346; *In re Rood*, 426 B.R. at 548.

Speer has not demonstrated his entitlement to an interlocutory appeal under § 158(a)(3).   An immediate appeal would not materially advance the ultimate termination of the litigation.   "On the contrary, and in light of the role of Rule 2004 examinations in pre-litigation discovery, the current

appeal, if permitted, would prolong rather than hasten the termination of the litigation." *In re Gray*, 447 B.R. at 534. Nor does this appeal involve a pure question of law. In the interlocutory-appeal context, "[t]he question of law must refer to a pure question of law that the reviewing court could decide quickly and cleanly without having to study the record." *In re Fairfield Sentry*, 458 B.R. at 673 (internal quotation marks and alteration omitted); *accord, e.g.*, *Lehman Bros. Special Financing Inc. v. BNY Corporate Trustee Servs. Ltd. (In re Lehman Bros. Holdings, Inc.)*, 422 B.R. 403, 406 (S.D.N.Y. 2009); *Kelly v. First Mid-Illinois Bank & Trust, N.A. (In re Kelly)*, No. 08-CV-2285, 2009 WL 102935, at *4 (C.D. Ill. Jan. 13, 2009). Determining whether the privilege applies to the documents and, if so, whether Speer waived it, are fact-intensive questions, as the bankruptcy court's thorough opinion demonstrates. Courts have emphasized that "[q]uestions that arise during the course of a bankruptcy proceeding concerning the appropriate scope of discovery and that do not involve controlling questions of law are left to the sound discretion of the court that is fully familiar with the entire proceeding—the bankruptcy judge." *In re Towers Fin.*, 164 B.R. at 721; *accord Countrywide Home Loans*, 2008 WL 2388285, at *5 (quoting *Towers*).

Finally, but importantly, the protective order issued in this case provides significant protection to Speer against broad disclosure of the documents that he claims are privileged. As the *Mohawk* Court noted, "protective orders . . . limit the spillover effects of disclosing sensitive information." 130 S. Ct. at 608.

Speer's motion for leave to appeal the challenged order is denied. *See, e.g.*, *In re Tullius*, 2011 WL 5006673, at *2–3 (denying motion for leave to appeal bankruptcy discovery order and citing cases); *In re Handloser*, 2011 WL 6934379, at *2 (denying motion for leave to appeal similar order); *In re Protron Digital*, 2011 WL 1585564, at *4 (denying motion for leave to appeal bankruptcy discovery order compelling production of allegedly privileged documents); *In re Gray*,

20

447 B.R. at 534 (denying motion for leave to appeal bankruptcy discovery order).

## III.   Conclusion

The challenged discovery order does not qualify as a final appealable order under 28 U.S.C. § 158(a)(1), as a  collateral order under the collateral-order doctrine, or for an interlocutory appeal under § 158(a)(3).  The trustee's motion to dismiss this appeal for lack of jurisdiction, (Docket Entry No. 5), is granted.  Speer's motion for leave to appeal, (Docket Entry No. 7), is denied.  This appeal is dismissed.

SIGNED on January 19, 2012, at Houston, Texas.

Lee H. Rosenthal
United States District Judge